1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

9  DANIEL MIRANDA, on behalf of himself and
   all similarly situated individuals,

10

11                        Plaintiff,

12             v.

13  CITY OF CERES,

14                        Defendant.

15

Case No.  1:18-cv-00041-DAD-BAM

FINDINGS AND RECOMMENDATIONS
REGARDING JOINT MOTION FOR
APPROVAL OF SETTLEMENT
AGREEMENT

(Doc. No. 43)

**FOURTEEN-DAY DEADLINE**

16        This Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., collective action is

17  currently before the Court on a joint motion for approval of a settlement agreement.  (Doc. No.

18  42.)  The matter was referred to the undersigned for findings and recommendations pursuant to

19  the Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of

20  California (Doc. No. 32) and Local Rule 302.

21        On August 28, 2020, the motion came before the Court for hearing.  Caren Sencer

22  appeared by telephone on behalf of Plaintiff Daniel Miranda.  Michael Youril appeared by

23  telephone on behalf of Defendant City of Ceres.  Having considered the briefing, and having

24  heard the arguments of counsel, the Court will recommend that the joint motion to approve the

25  settlement agreement be granted.

26                              **BACKGROUND**

27        This action is one of four related actions against the City of Ceres under the FLSA

28

1

1   alleging that the City paid cash in lieu of health benefits, which were illegally excluded in the

2   City's calculation of employees' regular rate of pay for the purposes of calculating overtime pay.

3   On January 9, 2018, Plaintiff Daniel Miranda commenced this action to recover unpaid overtime

4   compensation, liquidated damages and attorneys' fees and costs based on the City's alleged

5   failure to include all statutorily required forms of compensation in the calculation of the regular

6   rate of pay.[1]  (*See generally* Doc. No. 1.)

7          On May 8, 2018, the Court issued a Preliminary Scheduling Order, setting deadlines for

8   conditional certification under the FLSA.  (Doc. No. 21.)  Prior to the deadline for conditional

9   certification, the parties filed a stipulation for conditional certification and facilitated class

10  notice.  (Doc. No. 22.)  On December 14, 2018, the Court granted the parties' stipulation.

11  Specifically, the Court conditionally certified this action as a collective action under 29 U.S.C. §

12  216(b) consisting of all current or former employees of the City who worked statutory overtime

13  under the FLSA and received cash payments in lieu of health care benefits or savings payments

14  that were not included in the regular rate, between January 9, 2015 and the date conditional

15  certification was issued, except for those individuals who opted-in to, and signed individual

16  waivers in, *McManus, et al. v. City of Ceres*, United States District Court Case No.: 1:17-cv-

17  00355-DAD-MJS; *Quiroz, et al. v. City of Ceres*, United States District Court Case No. 1:17-cv-

18  00444-DAD-BAM or *Amador et al. v. City of Ceres*, United States District Court Case No.:

19  1:17-cv-00552-DAD-MJS.  (Doc. No. 23 at 3.)  The size of the collective is 38 persons,

20  including plaintiff Miranda.  The court appointed Plaintiff Daniel Miranda as collective action

21  representative and Weinberg, Roger & Rosenfeld as counsel for the collective class.  The court

22  also approved the proposed class notice and directed that notice be distributed consistent with the

23  parties' stipulation.  (*Id.*)

24         On May 20, 2020, the parties participated in a court-sponsored settlement conference.

25  The matter settled.  (Doc. No. 38.)  No substantive motion practice occurred.

26         On July 20, 2020, the parties filed the instant joint request for approval of the settlement

27  _____

28  [1]      Plaintiff also asserted claims under the California Labor Code, which subsequently were dismissed.  (Doc.
    No. 15.)

2

agreement.  (Doc. No. 43.)  The settlement agreement proposes a total payment of $99,500 to be allocated as follows:  $43,234.96 in settlement of plaintiffs' claims for overtime compensation; and $56,265.04 for attorneys' fees and costs (Doc. No. 43 at 7; Doc. No. 43-2 at 8-9.)  Each of the plaintiffs has voluntarily and affirmatively opted-in to the lawsuit and agreed "to become [a] party plaintiff and to be bound by any settlement of this action or adjudication by the Court." (Doc. No. 43-1 at ¶ 3; Doc. No. 43-2 at ¶ 12.) The consents were filed with the court. (Doc. Nos. 1-1, 5-1, 6, 25.) Attachment A to the Settlement Agreement provides the individual amount that each plaintiff will receive under the Settlement Agreement.[2] (Doc. No. 43-2 at ¶ 13.)

## LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.– Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Kerzich v. Cty. of Tuolumne*, No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496, at *2 (E.D. Cal. Apr. 19, 2019).  Thus, absent supervision by the Secretary of Labor, settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014); *Quiroz v. City of Ceres*, No. 1:17-cv-00444-DAD-BAM, 2019 WL 1005071, at *2 (E.D. Cal. Mar. 1, 2019) ("Settlement of collective action claims under the FLSA requires court approval.").

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, district

---

[2] The list indicates some individuals who opted to participate in the case but will not receive a monetary settlement based on their individualized circumstances. Each of these individuals has consented to the settlement of their claim without a monetary component. (Doc. No. 43-1 at ¶¶ 4, 12.)

courts in this circuit have applied the widely used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Kerzich v. County of Tuolomne*, 335 F. Supp.3d 1179, 1184 (E.D. Cal. 2018) (quoting *Selk*, 159 F. Supp. 3d at 1172). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because to do so would shield employers from the full cost of complying with the statute. *Selk*, 159 F. Supp. 3d at 1172.

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), recommendations adopted, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also

1    taken note of the "unique importance of the substantive labor rights involved" in settling FLSA

2    actions and adopted a "totality of circumstances approach that emphasizes the context of the

3    case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be

4    satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of

5    the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are

6    actually in dispute may be approved in order to promote the efficiency of encouraging settlement

7    of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL

8    6629608, at *2 (N.D. Cal. Dec. 19, 2012); *Quiroz*, 2019 WL 1005071, at *2.

9                                           **DISCUSSION**

10        **A.        Bona Fide Disputes**

11              The parties contend that there are bona fide disputes regarding the existence and extent of

12   the City's FLSA liability. Under the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th

13   Cir. 2016), the payment of cash-in-lieu of health benefits ("CIL compensation") must be

14   included in the calculation of the regular rate of pay for overtime payments under the FLSA.

15   Although the City acknowledges that cash-in-lieu of health benefits must be included in the

16   regular rate, the parties disagree over the methodology to be used in calculating the "regular

17   rate."   They dispute which hours of work should be counted for the FLSA calculation and which

18   additions should be included.  They also disagree about the effect, if any, of contractually

19   required premiums as offsets to the FLSA obligation.  (Doc. No. 43 at 9.)  According to the

20   parties, if the City prevailed on the rate calculation issues, damages would be reduced by over

21   66%. (*Id* at 10; Doc. No. 43-2 at ¶ 8.)

22              The parties also dispute whether plaintiffs are entitled to liquidated damages. *See* 29

23   U.S.C. §§ 216(b), 260. Liquidated damages may be avoided if the employer can establish

24   "subjective and objective good faith in its violation of the FLSA."  *Local 246 Util. Workers*

25   *Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996).  The parties indicate

26   that with respect to CIL compensation it was unsettled before *Flores* that such compensation

27   should be included in the "regular rate" of pay. According to the parties, if liquidated damages

28   were denied, then recovery would be reduced by 50%. (Doc. No. 43 at 10.)  *But see Kerzich v.*

                                                5

*County of Tuolumne*, 335 F. Supp.3d 1179, 1191 (E.D. Cal. 2018) ("The argument that the law was not sufficiently settled prior to the decision in *Flores* is not sufficient to entirely exclude the possibility of recovering liquidated damages, since such damages were awarded in Flores itself.")

Finally, the parties indicate that there is a dispute regarding the applicable statute of limitations. Under the FLSA, the statute of limitations is two years, which may be extended to three years if the violation is found to be willful. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). The parties report that it is disputed whether the FLSA violation at issue in this case was willful.

These disputes between the parties notwithstanding, the parties agree that the proposed settlement amount represents roughly the same relief that plaintiffs would be entitled to if they were to prevail on nearly every disputed issue. (Doc. No. 43 at 12.) In the related cases, the court considered similar disputes when assessing whether to approve the settlement and granted approval where the value of plaintiffs' claims had not been discounted as part of the settlement. *See e.g. Quiroz,* 2019 WL 1005071, at *3 (finding approval of settlement agreement would not thwart the purposes of the FLSA where each plaintiff would be receiving the same relief they would be entitled to if they were to prevail on every disputed issue); *McManus v. City of Ceres*, No. 1:17-cv- 00355-DAD-BAM, 2018 WL 4262126, at *3 (E.D. Cal. Sept. 6, 2018) (settlement amount represented 100 percent of what plaintiffs would expect to recover if the case were litigated to judgment). Similarly, approval here of the parties' proposed settlement agreement would not thwart the purposes of the FLSA. *Id.*; *see also Wagner v. County of Inyo*, No. 1:17-cv-00969-DAD-JLT, 2018 WL 5099761, at *3 (E.D. Cal. Oct. 18, 2018). The Court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

**B.    The Proposed Settlement Agreement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto,* No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is

fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017); *Slezak*, 2017 WL 2688224, at *3. The Court addresses each of these factors below.

### 1.   Plaintiffs' Range of Possible Recovery

Under the terms of the settlement agreement, defendant will pay plaintiffs a total sum of $43,234.96, which is near the maximum range for plaintiffs' recovery.  (Doc. No. 43 at 11.)  To determine this amount, plaintiffs' counsel identified the amount each plaintiff's regular rate was undercalculated then, using the methodology outlined in 29 C.F.R. § 778.113, determined the resulting underpayment over the previous three years. (Doc. No. 43-1 at ¶ 15.) The resulting amount for each plaintiff was multiplied by 60% to account for liquidated damages. (*Id.)* The damages breakdown by plaintiff is illustrated in the settlement agreement. (See Doc. No. 43-2 at 14.)

The parties assert that the settlement amount provides the plaintiffs with roughly the same relief they would be entitled to if they were to prevail on nearly every dispute.  (Doc. No. 43 at 11-12.)  As discussed at the hearing, under the settlement, plaintiffs will recover 100% of unpaid compensation and 60% of potential liquidated damages.  Defense counsel explained that the $43,234.96 calculation was not reduced by available offsets, resulting in a likely "inflated" amount of recovery to plaintiffs.[3]  (Doc. No. 43-2 at ¶ 10.)  Rather than take any offsets, plaintiffs were given 100% of the potential compensatory damages.  According to the City's simplified calculations, which excluded offsets and other considerations, total back pay amounted to roughly $34,000.  (*Id.*)

Consideration of the factor relating to the range of possible recovery weighs, in this case,

---

[3]       Defense counsel reported that certain of the related actions, such as *Quiroz* and *McManus*, relied on a third-party vendor to arrive at an actual allocation with all of the available offsets.  If that had been the process here, which it was not, then the damages calculations would have been reduced to a lower amount.

heavily in favor of approval of the FLSA settlement.

2.      The Stage of Proceedings and Amount of Discovery Completed

The Court is also required to evaluate the stage of the proceedings and the amount of discovery completed in order to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the Court finds that the parties have sufficient information to make an informed decision regarding settlement.  The parties exchanged initial disclosures and the City produced hundreds of pages of documents, which included timesheets and payroll records.  (Doc. No. 43-1 at ¶ 5.)  Plaintiffs constructed their estimate of liability based on the timesheets provided.  (*Id.* at ¶ 8.)  This factor weighs in favor of settlement.

3.      The Seriousness of the Litigation Risks Faced by the Parties

Courts favor settlement where there is "a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Here, Plaintiff asserts that the settlement agreement provides relief near the maximum possible recovery and continued litigation would likely jeopardize the relief already secured.  If this case were to proceed to trial, Plaintiff suggests that he and the collective would face uncertainties about how to calculate damages due to the disputes between the parties, including whether plaintiffs could recover damages based on allegations of the City's willfulness. (Doc. No. 43 at 13.)  The Court finds that prolonging this litigation would generate needless litigation expenses for both sides, and the parties will likely benefit financially by settling this action now.  Accordingly, consideration of this factor also weighs in favor of approval of the parties' FLSA settlement.

4.      The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to

unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case).  Here, the release provision "extends to all grievances, disputes or claims arising from or attributable to Plaintiffs' claims that Defendant violated the FLSA in this Action up to and including the Effective Date of this Agreement." (Doc. No. 43-2 at 9.)  This release provision is nearly identical to those previously found appropriate in FLSA cases, and the court similarly finds here that this release provision is reasonable. *See Quiroz*, 2019 WL 1005071, at *5; *McManus*, 2018 WL 4262126, at *5.   Consideration of this factor also weighs in favor of approval of the settlement.

> 5.      The Experience and Views af Counsel and the Opinion of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel and the law firm of Weinberg, Roger & Rosenfeld have considerable experience in litigating and settling cases asserting liability under the FLSA and have represented to the Court that this settlement is fair and reasonable. (Doc. No. 43-1 at ¶¶ 14-22.) Defense counsel also have years of experience advising public agencies on FLSA matters and defending public agencies in FLSA collective actions and have represented to this Court that the settlement is fair and reasonable and will have a materially beneficial effect on plaintiffs' compensation.  (Doc. No. 43-1 at ¶ 2.)  Consideration of this factor weighs in favor of approval of the settlement.

6.      The Possibility of Fraud or Collusion

The Court finds that in this case there is a low possibility of fraud or collusion because the parties used payroll records to calculate back overtime pay and liquidated damages and provided all plaintiffs the opportunity to review their settlement amounts. Moreover, the settlement negotiations were conducted during an arms-length settlement conference with a magistrate judge.  (Doc. No. 43 at 6.)  There is nothing in the record to suggest that Plaintiff's counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The requested award for attorneys' fees and costs—although greater than plaintiffs' recovery--does not detract from that recovery, since each plaintiff will receive 100% of compensatory damages and nearly the full amount of liquidated damages.  It appears to the Court that plaintiffs' recovery is not dependent upon or otherwise reduced by the attorneys' fees negotiated as part of the settlement.

Upon consideration of the totality of the circumstances, as discussed above, the Court finds that the proposed settlement is fair and reasonable.

### C.  Attorneys' Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; see also 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Vizcaino*,

1   290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the

2   lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the

3   lodestar calculation can be helpful in suggesting a higher percentage when litigation has been

4   protracted.").

5        According to the terms of this settlement, plaintiffs' counsel will be paid $56,265.04 in

6   attorneys' fees and costs and plaintiffs will receive $43,234.96, for a total recovery of $99,500.

7   (Doc. No. 43 at 16.) The total amount of attorneys' fees and costs is not only greater than

8   plaintiffs' recovery, it also represents roughly 56.5% of the settlement amount, which is well

9   above the benchmark.   (*Id.*)

10       Although higher than the standard benchmark, and greater than plaintiffs' recovery,

11  which raises questions about its reasonableness, the court will nonetheless recommend approval

12  of the fee award.  This recommendation is based on a number of considerations.  First, the total

13  amount of attorneys' fees and costs in this case, i.e., $56,265.04, is commensurate with the other

14  FLSA lawsuits against the City involving the same issues, albeit at a higher percentage.  The

15  attorneys' fees and costs in the other matters were as follows: *Quiroz et al. v. City of Ceres*, Case

16  No. 1:17-cv-00444 DAD BAM (E.D. Cal.) - $40,121.04 fees and costs; *Amador et al. v. City of*

17  *Ceres*, Case No. 1:17-cv-00552 DAD BAM (E.D. Cal.) - $51,566.38 fees and costs; and

18  *McManus et al. v. City of Ceres*, Case No. 1:17-cv-00355-DAD-MJS (E.D. Cal.) - $69,670 fees

19  and costs.[4]  (Doc. No. 43 at 17 n. 2.)

20       Second, despite the apparent imbalance between plaintiffs' total recovery and attorneys'

21  fees, plaintiffs nonetheless will recover 100% of unpaid compensation and 60% of potential

22  liquidated damages, all without any reduction in available offsets.  Plaintiffs' recovery not only

23  results in full compensation for total backpay, but also is wholly independent of any attorneys'

24  fees.  According to the parties, the amount of damages apparently was disclosed and examined

25  separately from attorneys' fees prior to settlement.  Moreover, plaintiffs are not responsible for

26  any payment of attorneys' fees and/or costs from their individual settlement amounts.  (Doc. No.

27  _____

28  [4]      A rough calculation confirms that the related matters also included a percentage of attorneys' fees and costs
    well above the standard benchmark.

43-2 at ¶ 6.)  This is an important fact to the Court's evaluation.

Third, and finally, a lodestar cross-check generally demonstrates the reasonableness of the award.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017); *see also Quiroz*, 2019 WL 1005071, at *7 (same).

According to counsel, using the low end rates previously accepted by this court ($370 for associates and $545 for shareholders), the amount of attorneys' fees expended would be calculated as $84,110, and using the high end rates ($495 for associates and $695 for shareholders), the amount of attorneys' fees expended would be calculated as $110,161.80. (Doc. No. 43 at 17.)  Those amounts far exceed the award of $56,265.04 in attorneys' fees and costs sought by counsel here.

For these reasons, the court therefore will recommend approval of the award of $56,265.04 in attorneys' fees and costs.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the parties' settlement agreement, including the award of attorneys' fees and costs, be approved as fair, reasonable, and just in all respects, and that the parties perform the settlement agreement in accordance with its terms.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Such a document should be captioned "Objections to

1    Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

2    objections within the specified time may result in the waiver of the "right to challenge the

3    magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir.

4    2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

5

6    IT IS SO ORDERED.

7        Dated:   __**September 11, 2020**__            ___/s/ *Barbara A. McAuliffe*___

8                                                              UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28